## FLORIDA CENTRAL AND PENINSULAR R. R. CO. v. CITY OF COLUMBIA.

1. LICENSE TAX—RAILROADS—COLUMBIA.—The F. C. & P. R. R. Co. having no track within the corporate limits of the city of Columbia, but running its trains therein on the track of the Southern Rail-

way, and doing its business there through the agents and offices of said road, is liable under city ordinance to pay license tax in city.

2. STATUTES CONSTRUED.—The act of 1871 (14 Stat., 569), conferring on city of Columbia power to assess license tax, is not repealed by Con. of 1895 or act of 1897 (22 Stat., 409). Act of 1871 construed.

3. LICENSE TAX—WORDS AND PHRASES.—"Business," in the act of 1871 (14 Stat., 569), *held* to include the business done by the F. C. & P. R. R. Co. in the city of Columbia.

4. IBID.—IBID.—"Exclusively," in town ordinance imposing license tax, *held* to apply to railroad doing only part of its terminal business in city.

5. IBID.—TAXES.—Statutory provisions as to taxing railroads do not apply to license tax imposed by city on the corporation as *a person.*

6. PLEADINGS.—No allegations in the complaint upon which question can be raised that city has not observed constitutional requirements in assessing license tax.

7. LICENSE TAX—ESTOPPEL.—A RAILROAD cannot plead as a bar to the imposition of a license tax by a city, that by its charter it is compelled to do business in that city.

Before TOWNSEND, J., Richland, April, 1898.    Affirmed.

Action by Florida Central and Peninsular Railroad against city of Columbia and J. Frost Walker, city treasurer, on the following complaint:

1. That the city of Columbia is and was at the times hereinafter named a municipal corporation duly organized and existing under the laws of the State of South Carolina; and the defendant, J. Frost Walker, is and was at the times hereinafter named the city treasurer of the city of Columbia, duly elected and qualified.

2. That the plaintiff was at the times hereinafter named and is now a corporation duly organized and existing under the laws of the State of Florida, and is the lessee of a certain railroad line, commencing at Cayce's Junction, in the county of Lexington, and extending thence to the city of Savannah, in the State of Georgia, but owns no tracks, depots, warehouses or other structures or property in the city of Columbia.

3. That this plaintiff, as the lessee of said line of railroad,

is engaged in operating the same to and from the city of
Savannah, in the State of Georgia, to said Cayce's Junction,
in the county of Lexington, State of South Carolina; and
under a traffic arrangement with the Southern Railway
Company runs its trains, engines and cars into the city of Co-
lumbia over the track of said Southern Railway Company,
and uses the yards, switches, &c., of the said Southern Rail-
way Company in the city of Columbia for shifting purposes,
and delivers to the agent of the Southern Railway Company
freight received from points outside of the city of Columbia
and outside of the State of South Carolina, within the
United States, to consignees within the city of Columbia,
and receives freight from consignors at the city of Columbia
to consignees at points outside of the city of Columbia, and
within the State of South Carolina as well as without the
same; and receives and transfers passengers to and from the
city of Columbia to points outside of the city of Columbia,
both within and without the State of South Carolina; its
principal business, however, being the receipt and delivery to
and from the Southern Railway Company of through
freight and passengers from points outside of the city of Co-
lumbia to points outside of the State of South Carolina and
within the United States; and this plaintiff, by its traffic ar-
rangement with the Southern Railway Company, as above
stated, obtains the services of the agent of the said Southern
Railway Company as its agent, contributing a portion of the
compensation which he is entitled to receive; but this plain-
tiff avers that it does no business whatever wholly and exclu-
sively within the city of Columbia, and does no business ex-
cept interstate business as aforesaid other than such as it is
compelled by the laws of the State of South Carolina as a
common carrier operating the said South Bound Railroad
to do.

4. That by an act entitled "An act to alter and amend an
act entitled 'an act to alter and amend the charter and ex-
tend the limits of the city of Columbia,'" approved March
2d, 1871, the General Assembly of the State of South Caro-

lina conferred the power upon the mayor and aldermen of said city to require all persons, companies and corporations engaged in any business or avocation of any kind whatever within the limits of the city of Columbia to take out a license from the mayor and aldermen of said city, who are authorized to impose a reasonable charge or tax for the conduct of the same.

5. That on the 22d day of December, 1896, the mayor and aldermen of the city of Columbia, in council assembled, passed an ordinance entitled "An ordinance to regulate licenses for the year 1897," wherein and whereby it is ordained by section 3 of said ordinance as follows: "Section 3. Every person, firm, company or corporation required by the ordinances of the city of Columbia to obtain a license to engage in any trade, business or profession for which a license is required, shall, before the 15th day of January of each year, register with the city assessor and auditor, first, his or her name or style, and in case of a firm or company, the names of the several persons constituting such firm or company, and their places of business; second, the trade, business or profession for which a license is required; third, the place where such trade, business or profession is carried on; and in the case of a dealer in goods, wares or merchandise, the amount, extent and value of business carried on; all of which shall be given under oath." * * *

6. That it was further ordained by section 4 of said ordinance as follows: "Section 4. If any person or persons exercise or carry on any trade, business or profession, for the exercising, carrying on or doing of which a license is required by this ordinance, without first registering and taking out such a license as in that behalf required, he, she or they, besides being liable to the payment of the license, shall be subject to a fine not to exceed $40, or imprisonment in the city station house for a time not to exceed thirty days, upon conviction before the mayor or alderman acting mayor."

7. That the mayor and aldermen, in council assembled, further undertook to ordain and impose, by section 8 of said

ordinance, a license upon railroads in the following words and figures: "Railroads—steam—for business done exclusively within the city of Columbia, and not including any business done to or from points without the State, and not including any business done for the government of the United States, its officers or agents, $200."

8. That it is further ordained by section 12 of said ordinance, "That the city auditor shall be required to summon before the mayor all persons doing business without a license, immediately after January 15th, 1897,"

9. That the plaintiff failed and refused to register, as it is required by section 3 of said ordinance, hereinabove set forth, deeming and claiming that said ordinance had no application and did not include in its terms the plaintiff, and also deeming and claiming that if it was included in it, and by its terms it was attempted to subject it to pay a license, that it was invalid and contrary to law, and that it, the plaintiff, was not liable to be assessed, taxed or required to pay any license fee or tax whatsoever to the said city of Columbia for the prosecution of its business, and it further declined and refused to pay said license at all.

10. That on the 26th day of January, 1897, the city assessor and auditor of the said city of Columbia caused to be served on the agent of the Southern Railway Company, so acting as agent for this plaintiff as aforesaid, a summons in words and figures following:

"Office of City Assessor and Auditor,

"Columbia, S. C., January 26, 1897.

"F. C. and P. R. R. Co.. You are hereby summoned to appear before his Honor, the Mayor, on the 29th inst., at 9:30 o'clock A. M., to answer the charge of doing a business without a license, in violation of the city ordinance.

"By order of the Mayor. T. T. TALLEY,

"City Assessor and Auditor."

That this plaintiff, through and by its attorney, appeared in response to said summons before the mayor of the city of Columbia, and protested against its liability to pay a license

tax; but the said mayor of the city of Columbia announced his decision that this plaintiff was liable to pay said license tax, and that if the same was not paid on or before a day named, being a few days after the appearance before council, that an additional fine of $40 would be imposed upon said plaintiff for transacting *any business,* and that said fine would be imposed for every day business was so conducted within the city of Columbia; whereupon this plaintiff filed its petition before the mayor and aldermen of the city of Columbia, in council assembled, setting out the character of business which it transacted, as hereinbefore alleged, and submitted that it was not liable to any license tax or fee to the city of Columbia, and praying that it might be heard by council in regard thereto, which petition duly came up before the said mayor and aldermen, in council assembled, and this plaintiff, by its counsel, appeared before said body, but shortly after the matter had been considered, and was informed that the same had been referred to a committee of council, with power to act; and was subsequently informed that the said petition had been rejected.  This plaintiff, upon being so summoned as aforesaid, to avoid the penalties attempted to be imposed by the said mayor of the city of Columbia, and under the apprehension that said penalties would be imposed upon it and its agents, and to prevent the imposition thereof, the plaintiff paid said license fee of $200 to the city treasurer of the city of Columbia, to wit: the defendant, J. Frost Walker, and at the same time filed its protest against the action of the said city authorities in said behalf, in words and figures as follows, to wit:

"Columbia, S. C., 28th January, 1897.

"To J. Frost Walker, Esq., clerk and treasurer city of Columbia, Columbia, S. C.

"Dear Sir: The Florida Central and Peninsular Railroad Company having been cited to appear before the honorable mayor of the city of Columbia to show cause why it should not be dealt with for doing business in the city of Columbia without a license, would respectfully protest against its lia-

bility to pay such license; but to avoid the expense and penalties attaching thereto upon such failure, if it should be held that it is liable to the license fee imposed, it hereby pays the amount thereof, and protests against the validity of the demand.

"Respectfully,          Wm. H. Lyles, Attorney."

11. That the plaintiff submits that it does not come within the terms of said ordinance, and that it does not do any business exclusively within the city of Columbia, and is not liable to said tax; and it further submits, that, as a common carrier, it is compelled by law to receive freight and passengers offered to it for carriage, and cannot refuse to *discontinue* its said business by virtue of the obligations of its charter, and by reason of its charter obligations it is in duty bound to continue to maintain and operate its said road as it is now operated and maintained, any by reason of such public duties being devolved upon it by the terms of its charter, it is not liable to be taxed as and for a license by the city of Columbia.

After the reading of the complaint, the defendants interposed an oral demurrer, and filed the following as a statement of the grounds thereof:

1. In that it appears from the facts alleged therein that the mayor and aldermen of the city of Columbia were duly authorized by the General Assembly of the State of South Carolina to exact of the plaintiff the payment of the license tax paid by it, and sought to be recovered in this action, and to pass the ordinance referred to in the complaint herein providing for the imposition and collection of said license tax; and that it further appears from the facts alleged therein that a portion of the plaintiff's business is transacted entirely within the State of South Carolina, and the city of Columbia, and that the plaintiff comes within the provisions of the said ordinance, and is liable for the said license tax, the same being imposed for the business done exclusively within the State of South Carolina and the city of Columbia,

and not for any business done to or from points without the State, nor for any business done for the government of the United States, its officers and agents.

2. In that it appears from the facts alleged therein that the payment of the license tax by plaintiff was not made under such circumstances of coercion or duress as entitles it to recover the same.

From judgment sustaining demurrer, plaintiff appeals.

*Messrs. C. J. C. Hutson* and *Wm. H. Lyles,* for appellant, cite: *Illegal tax paid under compulsion can be recovered:* 15 Wall., 75; 4 Met., 181; 3 Cush., 567; 57 Pa. St., 434; 8 Ill., 502; 25 Ill., 411; 29 Ia., 310; 35 Conn., 563; Deady, 400; 21 Mich., 483; 45 S. C., 602; 49 S. C., 449. *No license tax should be imposed on corporation for doing interstate business:* 12 U. S., 640; art. 8, sec. 6, Con. 1895. *The act of 1871 conferring this power on the city is repealed by Con. of 1895, and by* 22 Stat., 409. *Statutory provisions as to taxation are exclusive of all other methods:* Rev. Stat., 739. *These provisions are contained in* Rev. Stat., 233, 236, 240, 241. *This license tax is not graduated as required by* art. XIII., sec. 6, Con. 1895.

*Mr. H. Cowper Patton,* contra, cites: *City had the authority to pass the ordinance:* 14 Stat., 569; art. X., sec. 5, Con. 1895; art. IX., sec. 8, Con. 1868; 153 U. S., 694; 4 S. C., 403; 6 S. C., 1; 53 U. S., 95; 16 S. C., 51; 27 S. C., 316; 29 S. C., 438; 45 S. C., 602; 34 S. C., 541; 4 S. C., 428; 1 Rich., 368; 1 McM., 323; art. X., sec. 1, Con. 1895; art. XVII., sec. 10, Con. 1895; 11 S. C., 290. *Payment was not under compulsion, and no appeal lies:* Rice, 26; 2 Rich., 317; 8 Rich., 260; 8 Cush., 55; 95 U. S., 213; 4 Gill, 425; 97 U. S., 181; 98 U. S., 541; 9 Cush., 233; 34 Mich., 171; 18 Cal., 271; 46 Cal., 598; 31 Pa. St., 73; 59 Miss., 385.

Feb. 28, 1899. The opinion of the Court was delivered by Mr. CHIEF JUSTICE McIVER. This was an action to re-

18—54

cover the sum of $200, paid by plaintiff to the treasurer of the city of Columbia, under protest, as a license tax, illegally, as it is claimed, exacted of plaintiff company. The defendant interposed a demurrer to the complaint upon the ground that the complaint fails to state facts sufficient to constitute a cause of action; and, in accordance with the rule of Court, specified in writing two grounds upon which the demurrer should be sustained substantially as follows: 1st. Because the facts stated in the complaint show that the city authorities of Columbia were duly authorized to impose the tax complained of. 2d. Because the allegations contained in the complaint do not show that the tax was paid under such circumstances of coercion or duress as entitles the plaintiff to recover the amount paid. The Circuit Judge, without passing upon the second ground, sustained the demurrer upon the first ground, and dismissed the complaint. From this judgment plaintiff appeals upon the several grounds set out in the record, which substantially raise the single question whether the tax in question was lawfully imposed. The defendants have also, in accordance with the proper practice, given notice that they would ask this Court to sustain the demurrer upon the second ground also. Inasmuch as the questions turn solely upon the sufficiency of the allegations of the complaint, it will be proper for the Reporter to set out in his report of the case a copy of the complaint, as well as a copy of the grounds upon which the demurrer is based.

We will first consider those allegations in the complaint which relate to the first ground upon which the demurrer is rested, with a view to ascertain whether such allegations show that the tax in question was lawfully imposed. These allegations are, substantially, as follows: 1st. That the city of Columbia is a municipal corporation. 2d. That the plaintiff is a corporation duly organized under the laws of the State of Florida, and as such is the lessee of a certain railroad, commencing at Cayce's Junction, in the county of Lexington, South Carolina, and extending thence to the city of Savannah, in the State of Georgia, but owns no tracks, struc-

tures or other property in the city of Columbia.   3d. That
the plaintiff, as such lessee, is engaged in operating the said
line of railroad between the two termini above mentioned,
and, under a traffic arrangement with the Southern Railway
Company, runs its trains into the city of Columbia over the
tracks of said Southern Railway Company, using the yards,
switches and other appliances of said last mentioned com-
pany, and delivers to and receives from the agent of said
Southern Railway Company, to whose compensation the
plaintiff contributes its proper proportion, freight from
points outside of the city of Columbia to consignees within
said city, as well as freight from consignors in the said city
of Columbia to be delivered to consignees outside of said
city, and also receives and transfers passengers to and from
the said city to and from points outside of said city; but
plaintiff avers that it does no business whatever wholly and
exclusively within the city of Columbia, and does no busi-
ness, except interstate business, other than such, as a com-
mon carrier, it is compelled to do.   4th. That by the charter
of the city of Columbia, the General Assembly of the State
of South Carolina conferred upon the mayor and aldermen
of said city the power to require all persons, companies and
corporations engaged in any business or avocation of any
kind whatever within the limits of the city of Columbia, to
take out a license from the mayor and aldermen of said city,
who are authorized to impose a reasonable charge or tax for
the conduct of the same.   5th. That on the 22d of Decem-
ber, 1896, the city council of Columbia passed an ordinance
entitled "An ordinance to regulate licenses for the year
1897," certain sections of which are set out in the complaint,
which, however, are too long to be inserted here, but which
may be seen by reference to the copy of the complaint, which
will be incorporated in the report of this case.   It is suffi-
cient to say here that by one of the provisions of said ordi-
nance, every person, firm, company or corporation required
by the ordinances of said city to obtain a license to engage in
any trade, business or profession for which a license is re-

quired, shall, before the 15th day of January in each year, register with the city assessor and auditor the name of the person or corporation, &c.; and by another provision of said ordinance a license tax is imposed upon various classes of persons, amongst others railroad corporations, in the following language: "Railroads—steam—for business done exclusively within the city of Columbia, and not including any business done to or from points without the State, and not including any business done for the government of the United States, its officers or agents, $200." 6th. That the plaintiff failed and refused to register as required, claiming that said ordinance had no application to and did not include in its terms the plaintiff company; and even if it did, said ordinance is invalid and contrary to law.

Taking these allegations in the complaint, thus stated in brief, to be true, it seems to us clear that the license tax in question was imposed by lawful authority. For they show that the plaintiff is a railroad corporation, doing a portion, at least, of its business within the city of Columbia, with the residents of that city; that the municipal corporation of Columbia has been authorized by the General Assembly of this State to impose a license tax upon all persons, companies or corporations engaged in any business or avocation of any kind whatever within the limits of the city of Columbia; and that such tax has been imposed by an ordinance passed by the proper authorities of said city. If, then, the legislation mentioned in the complaint, both State and municipal, be a valid exercise of the law-making (power, we do not see how there can be a doubt as to the legality of the tax in question. It is not and cannot be denied that, under the Constitution of 1868, the General Assembly may, either itself impose a license tax *(State* vs. *Hayne,* 4 S. C., 403,) or may empower a municipal corporation to impose such a tax—*State* vs. *Columbia,* 6 S. C., 1; *Charleston* vs. *Oliver,* 16 S. C., 51; *Information* vs. *Jager,* 29 S. C., 438. Nor, as we understand it, is it denied that such a power may be exercised under the present Constitu-

tion.    But the contention is that, at the time the ordinance imposing this tax was passed, the city authorities were not empowered to impose a license tax, because the act of 1871, 14 Stat., 569, or at least section 8 thereof conferring such power, had been repealed—first, by the Constitution of 1895, and next by the act of 1897, 22 Stat., 409.    The Constitution of 1895, in subdivision 1, of sec. 11, of art. XVII., expressly declares: "That all laws in force in this State, at the time of the adoption of this Constitution, not inconsistent therewith and constitutional when enacted, shall remain in full force until altered or repealed by the General Assembly, or expire by their own limitation;" and in the third subdivision of the same section it is declared that: "The provisions of all laws which are inconsistent with this section shall cease upon its adoption"—the exception stated not being material to this inquiry.    So that all laws of force at the time of the adoption of the present Constitution remained in force, unless they were unconstitutional when enacted, or were inconsistent with the provisions of the Constitution of 1895.    Now, the provisions of sec. 8 of the act of 1871, above referred to, were certainly not unconstitutional when enacted, for it was expressly held otherwise in *State* vs. *Columbia, supra.*    Nor do we think there is any inconsistency between the act of 1871 and the provisions of the present Constitution.    On the contrary, the right to impose license taxes by a municipal corporation is expressly recognized by sec. 6 of art. VIII. of the present Constitution.    "The corporate authorities of cities and towns in this State shall be vested with power to assess and collect taxes for corporate purposes * * * license * * * taxes imposed shall be graduated so as to secure a just imposition of such tax upon the classes subject thereto."    It is contended, however, that the act of 1871 is inconsistent with sec. 3 of art. VIII., which declares that: "The General Assembly shall restrict the powers of cities and towns to levy taxes and assessments," and it is claimed that there is no such restriction in the act of 1871.

It will be observed, in the first place, that the Consti-

tution of 1868, in sec. 9 of art. IX., contained a simi-lar provision, and yet in *State* vs. *Columbia, supra,* which arose and was decided under the Constitution of 1868, such a provision was not found to be any obstacle to declaring the act constitutional.  But, in the next place, it is a mistake to say that the act of 1871 contains no provision restricting the powers of taxation on the part of the municipal corporation, for in section 5 of that act, the power to impose a tax for the support of the poor is expressly restricted, and in section 12 the power of taxation is still further restricted. And in addition to this, the act of 1854, 12 Stat., 333, of which the act of 1871 is an amendment, and must, therefore, be read with it, in its eighth, ninth and tenth sections imposes restrictions upon the general powers of taxation conferred upon the mayor and aldermen of the city of Columbia.  It is clear, therefore, that the power conferred upon the city of Columbia to impose license taxes has not been repealed or abrogated by the present Constitution. Next, it is contended that so much of the act of 1871 as empowers the mayor and aldermen to impose a license tax upon persons engaged in any business or avocation, is repealed by the act of 1897, 22 Stat., 409.  It is well known, as a matter of legislative history, that prior to the passage of that act, some municipal corporations in this State were only invested with power to impose taxes upon *real* property, while others were empowered to impose taxes upon *personal* as well as *real* property, and the sole object of that act was to bring about uniformity in the taxation of *property,* as required by sec. 6 of art. VIII. of the present Constitution, and not to deal in any respect with taxation imposed upon *persons.* The act is entitled "an act to render uniform the mode of taxation in towns and cities, in accordance with sec. 6, art. VIII., of the Constitution of 1895."  In its first section the requirement is that "all municipal taxes levied by cities and towns in this State shall be levied on all property, real and personal, not exempt by law," &c.  The second section reads as follows: "That the clauses of the charters of any

town or cities restricting taxation in said towns to real estate only, are hereby repealed." And the third section contains a general repealing clause of all acts or parts of acts *inconsistent* with this act. This act cannot be regarded as a repeal of any previous act empowering any municipal corporation to impose a license tax, as that would be in conflict with the provisions of the Constitution above cited, expressly recognizing and requiring that the corporate authorities of cities and towns *shall* be vested with power to impose taxes upon both persons and property—expressly mentioning license taxes; and, besides, the whole tenor of the act shows that it was passed for the purpose of securing uniformity in the mode of taxation of *property,* and has no reference to the taxation of *persons.*

Again, it is contended that in the act of 1871, conferring the power to impose taxes on a person carrying on any business or avocation within the city of Columbia, the term "business" was used in the sense of the word "avocation," and does not authorize the imposition of such a tax upon a railroad company which does only a portion of its business within the city of Columbia. It does not seem to us that the act requires, or even justifies, any such construction. Both terms are used in the act— the language of the act being that power is conferred "to require all persons, companies and corporations engaged in any business or avocation of any kind whatever within the limits of the city of Columbia," to take out a license and pay a reasonable charge or tax therefor. If, therefore, a person or corporation is engaged in business of any kind whatever within the limits of the city, such a tax may be imposed; and the complaint shows on its face that the plaintiff is a corporation engaged in business within the limits of the city of Columbia; that the fact that it is also engaged in business of a similar character outside the city limits, cannot affect the question. It has an agent, regularly employed, in the city of Columbia to attend to its business in that city; for the fact that such agent is also the agent of the South-

ern Railway Company does not forbid his being also the agent of the plaintiff company; and is doing business in the city of Columbia in the same manner, though possibly not to the same extent, as any other railroad company having a terminus in said city. Indeed, the construction contended for would lead to the conclusion that while all persons or corporations doing business in the city of Columbia may be required to pay a license tax, a railroad company, though enjoying all the advantages of police protection and any other advantages afforded by the city government, is not so liable, for we suppose that it rarely, if ever, happens that a railroad company does *all* of its business within the corporate limits of any city or town. Such a construction cannot be accepted.

Reliance is also placed upon the word "exclusively" as used in the ordinance—the language being: "Railroads—steam—for business done exclusively within the city of Columbia,", &c. But this manifestly does not mean that only those doing business *exclusively* within the corporate limits of the city are liable to the tax, but the meaning clearly is that the railroad company is taxed only for the privilege of doing such of its business as is done exclusively within the city limits, and not for the privilege of doing any of the other business.

Again, it is contended that where the General Assembly has prescribed a particular method of taxation, no other mode can be adopted; and reference is made to the several sections of the Revised Statutes, providing the mode by which the railroads must be taxed, which does not include a license tax. But it is very obvious that these provisions are only intended to prescribe the mode in which the *value* of railroad *property* may be ascertained for the purpose of taxation of such *property,* and do not in any way relate to the taxation of a railroad corporation *as a person.* This is shown by one of the sections (739), cited by apepllant from 2 Elliott on Railroads, in which it is said: "Where the statute prescribes a specific method for assessing

or *valuing the property* of railroad companies, the method prescribed excludes all others, and must be pursued. The legislative method is always exclusive. The rule is settled that where the legislature classifies *property,* and prescribes the mode in which *it* shall be taxed, neither the taxing officers nor the Courts can prescribe any other." We have italicized such of the language in the foregoing quotation as seems to us to point directly to the view which we take. In addition to this, in sec. 759 of the same volume, the author, in express terms, recognizes the doctrine that a license tax is not a tax upon property, for he says: "Such a tax is not a tax upon property." The position taken by counsel for appellant cannot, therefore, be sustained.

Again, it is contended that the license tax here in question was not graduated, as required by sec. 6, of art. VIII., of the present Constitution. It is sufficient to say, in answer to this position, that there is no allegation in the complaint upon which such a point can be raised. This Court, certainly, will not assume, in the absence of any allegations to that effect, that the municipal authorities of the city of Columbia have failed to observe the requirements of the Constitution.

Finally, it is contended by appellant that inasmuch as the plaintiff company is a corporation, compelled by its charter, as a common carrier, to do such business as it does in the city of Columbia, it cannot be required to take out a license for doing such business, and pay a tax therefor, as the imposition of such a tax is equivalent to the power to prohibit plaintiff from doing that which, by the law of the land, it is required to do. It is sufficient to say that this point is disposed of by the case of *The State* vs. *Columbia, supra,* when the point was decided adversely to the view contended for by the appellant.

We are of opinion, therefore, that there was no error upon the part of the Circuit Judge in sustaining the demurrer upon the first ground above stated. Under this view, the question presented by the additional ground upon which de-

fendants have given notice that they would ask this Court to sustain the demurrer does not arise, and need not be considered.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.