14227

SOUTHERN LIQUOR DISTRIBUTORS, INC., *ET AL.* v. DANIEL, ATTY. GEN. *ET AL.*

(183 S. E., 765)

*Messrs. C. T. Graydon* and *J. A. Hutto,* for petitioners,

*Messrs. J. D. Gilland, R. B. Harrelson, Lide & School-field* and *Shepherd K. Nash,* for respondents,

February 12, 1936.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

This is an action in the original jurisdiction of the Supreme Court to prevent towns and cities of South Carolina from enforcing, by arrest and prosecution, parties in the employ of wholesale liquor distributing companies, engaged in delivering whisky, with their trucks, to retail license stores within said towns and cities in consummation of the sale of the whisky being delivered, ordinances of said towns and cities requiring trucks, nonresident, delivering goods, wares, and merchandise within such towns and cities without first

purchasing from said towns and cities a license so to do, which said ordinances provide for fine or imprisonment upon failure to procure a license.

It is not questioned that such ordinances are valid and enforceable, except where the Legislature has acted, but if such ordinances are in conflict with the expressed wish of the Legislature, then such ordinances are, to the extent the Legislature prohibits, void and unenforceable. The inherent power to permit or to prohibit the levying of such a tax by municipalities is in the Legislature. See *Hill v. City Council of Abbeville,* 59 S. C., 396, 38 S. E., 11; *Carroll v. York,* 109 S. C., 1, 95 S. E., 121; *American Bakeries Co. v. City of Sumter,* 173 S. C., 94, 174 S. E., 919.

Act No. 232 of the General Assembly of South Carolina (page 325), approved May 14, 1935, making legal the sale of alcoholic beverages within the State, contains the following provision (page 330, § 8) : "§ 8. The licenses and excise taxes herein provided, for the privilege of engaging in the business of manufacturing and selling alcoholic liquors, shall be in lieu of all other taxes and licenses—State, County, and municipal—except property, State income, and corporation license taxes."

Section 11 of Article 8 of the Constitution of 1895 prohibits the General Assembly from delegating to any municipal corporation the power to issue licenses to sell alcoholic liquors or beverages.

In legalizing the sale of alcoholic beverages in this State, the General Assembly was not unmindful that towns and cities were entitled to a portion of the revenue derived from the licenses, taxes, and penalties on account of the violation of bonds collected under said Act, and therefore 15 per cent. thereof is apportioned to the municipality in which the licensee is conducting business, and which percentage is based upon the actual retail sales and the fees collected in said municipality, regardless of where the stamps may be affixed to the containers.

The dissenting opinion in this case succinctly sets forth the facts, and the issues raised by the pleadings. We will not repeat. However, we agree that the paramount question to be decided is stated in said opinion, as follows: "Does the imposition of a license fee for the delivery by the wholesaler of his whiskies in his own trucks violate the provisions of the Statute?"

There has been special legislation with reference to the sale of liquor, and the statute itself prohibits municipalities from imposing any tax on a wholesaler or retailer of whisky except property, and municipalities are bound strictly by the statute and can enforce no other tax or license. Since a municipality cannot charge a tax or license for engaging in the business of manufacturing and selling liquors, can a town or city circumvent the statute by charging an additional tax under the guise of a delivery license? Is not the delivery of the liquor very necessary to the consummation of the sale of the liquor, and is there any sale until there is a delivery, actual or constructive? If this be so, then the wholesalers are still engaged in the business of selling liquor when they are delivering it.

The case of *Croswell & Co. v. Town of Bishopville,* 172 S. C., 26, 172 S. E., 698, cited by respondents as authority for upholding the ordinances of the various towns charging a delivery license on these trucks, allowed the Town of Bishopville to collect a license from Crosswell & Co. when it delivered its goods by its own trucks to its customers on the ground that Crosswell & Co. were doing business within the Town of Bishopville. The case of *Pee Dee Chair Co. v. City of Camden,* 165 S. C., 86, 162 S. E., 771, held that a single delivery of chairs, when there was no showing that other deliveries were contemplated, did not constitute such doing of business as would subject the chair company to the payment of a license tax; and the case of *American Bakeries Co. v. City of Sumter, supra,* held that a town or city can make a different classification as between the residents of a city and nonresidents doing business within the city.

Following the cases just above cited to a logical conclusion, we hold that where the trucks of petitioners are delivering whisky, for which petitioners had orders, then petitioners are doing the business of selling whisky, and when the statute specifically sets forth the tax for which one engaging in the business of selling alcoholic liquors shall be liable, and in plain, understandable, and unambiguous language, declares that such taxes "shall be in lieu of all other taxes and licenses—State, county, and municipal—except property, State income, and corporation license taxes," then an ordinance of a town or city requiring a delivery license of such wholesaler of alcoholic liquors is null and void, and, strange as it may seem, has no potency.

Respondents raise the question of procedure. This is not a proceeding to enjoin the collection of a tax, but to enjoin the criminal prosecution of employees of petitioners for violating the alleged license ordinances of the respondents, towns and cities, by their law enforcement officers.

The temporary restraining order and rule to show cause was granted under the authority of *Cain v. Daly,* 74 S. C., 480, 55 S. E., 110; *Palmetto Golf Club v. Robinson, Sheriff,* 143 S. C., 347, 141 S. E., 610, and *Ex Parte Bates* (*City of Sumter v. Bates*), 127 S. C., 167, 120 S. E., 717.

Having held the ordinances of respondents, towns and cities, void as to the delivery of alcoholic liquors by wholesalers in their own trucks, it follows that the return of respondents to the rule to show cause be adjudged insufficient, and the temporary restraining order heretofore granted is made permanent.

MESSRS. JUSTICES CARTER and FISHBURNE concur.

MR. CHIEF JUSTICE STABLER and MR. JUSTICE BONHAM dissent.

MR. JUSTICE BONHAM (dissenting): "This is an action in the original jurisdiction of the Supreme Court to prevent the towns and cities of South Carolina from enforcing by arresting and prosecuting parties who are employed by

wholesale liquor distributing companies for alleged violation of license ordinances in the various towns and cities for the delivery of whiskey to retail license (liquor) stores within said towns and cities."

This succinct and clear statement of the purpose of the action is the statement contained in the transcript of record.

The petition was addressed to the "Hon. D. Gordon Baker, Associate Justice of the South Carolina Supreme Court."

It recites that the named petitioner, Southern Liquor Distributors, Incorporated, of South Carolina, and certain others named in the body of the petition, are duly organized, and are licensed to do business as wholesale liquor distributors in the State of South Carolina, at the several places of business of each of them set out in the record. The place of business of Southern Liquor Distributors, Incorporated, being at Columbia, S. C. That the defendant, Hon. John M. Daniel, is the Attorney General of the State and is charged with the enforcement of the laws of the State; that D. E. Ellerbe is mayor of the City of Florence, S. C., and is sued as representing a class too numerous to mention of the mayors of the several towns and cities of the State; that Laurie Burch is the chief of police of the City of Florence and is sued as representing a class consisting of the chiefs of police of the various towns and cities of the State, and of the constables, tax collectors and other enforcement officers of the various towns and cities of the State; that the petitioners are engaged in the wholesale distribution of whisky with the principal place of business of each named; that each of them has complied with all of the laws of South Carolina relating to the license of wholesale liquor dealers, has posted bond and does duly affix the stamps required by law to be affixed to each and every package of whisky sent from the place of business of each of said petitioners, and each of them has complied in every way with the law commonly known as Act No. 232, Acts of 1935. That a number of

towns and cities in the State, including those named in this petition, are attempting to levy an additional tax upon the business of petitioners under various forms and guises of license; some being designated "liquor dealers' license"; some as "license for delivery of whiskey"; and some as "delivery licenses." That in the Town of Florence is designated as a delivery license for whisky. That petitioners' method of doing business is to receive orders from duly licensed retail liquor dealers in the various towns and cities in the State and to deliver the whisky by the trucks of the several wholesale dealers to the purchasers; that your petitioners have invested large sums of money in this business; that it was the intention of the Act above referred to that the revenue derived from licenses and taxes on liquor should be divided 60 per cent. to the State, 25 per cent. to the county, and 15 per cent. to the municipality in which the licensee is conducting; that the said wholesale license or tax so affixed to the liquor was intended to be and is in lieu of all other taxes and licenses, State, county and municipal, except property, State income and corporation license taxes; that the petitioner, Southern Liquor Distributors, Inc., has had one driver arrested in Florence, and other of the petitioners have had drivers of their trucks delivering whisky to customers arrested, and they have been required, under threat of and actual prosecution, to pay the alleged license tax in a number of towns in the State, and have pending a number of suits to recover back the same in accordance with the statute.

Upon this petition, Mr. Justice Baker ordered that the Attorney General, D. E. Ellerbe, mayor of the Town of Florence, and all other mayors of the incorporated cities and towns of South Carolina, and Laurie Burch, chief of police of the Town of Florence, and the chiefs of police and those acting under them in the various incorporated towns and cities in the State, do show cause, if any they have, why a permanent injunction should not be granted in the above-entitled matter, before the Supreme Court of South Carolina

at its next regular meeting. He also granted a temporary restraining order in the case.

To this rule the several defendants, and towns and cities named in the order, made return.

The Towns of Florence, Sumter, Mullins, and Marion set forth in their returns that the ordinances imposed license fees upon persons and firms from outside the respective towns delivering goods, wares, and merchandise, by truck, within the limits of the several towns, and that the said ordinances did not impose a license fee for the privilege of doing business as a liquor dealer. The return of the City of Florence makes the further issue that the license ordinance is a valid tax measure, not in conflict with any constitutional mandate or statutory laws of the State, and that under the inhibitions of Sections 2845-2847, inclusive, Code 1932, may not be stayed by injunction.

The Attorney General made return that his duties as Attorney General do not embrace the matters alleged in the petition.

The matter was heard at the October, 1935, term of the Supreme Court, upon the petition, order of Mr. Justice Baker and the several returns to the rule to show cause.

The brief of counsel for petitioners states the issue upon which it stands in these words: "Can a municipality, under the law, charge a license for a wholesale whiskey dealer, who has complied with the State law, paid the license required and posted the proper bond, charge such wholesale liquor dealer an additional license tax to deliver whiskey in the municipality under the guise of a business or delivery truck license?"

Counsel for respondents raise the further issue that this procedure may not be maintained because it is an attempt to enjoin the collection of a license tax contrary to the statute law of the State.

Act No. 232 of the Acts of 1935 regulates the manufacture and sale of alcoholic liquors in this State. Section 2 pro-

vides for the issuance by the Tax Commission of the State of licenses to manufacture and sell at wholesale and retail such alcoholic beverages. Section 3 provides that the Tax Commission shall prescribe the form of the license to be used. Section 8 provides that: "The licenses and excise taxes herein provided, for the privilege of engaging in the business of manufacturing and selling alcoholic liquors, shall be in lieu of all other taxes and licenses—State, County and municipal—except property, State income, and corporation license taxes."

Section 14 provides that the licenses, taxes, and sums derived from the violation of bonds shall be distributed as follows: 60·per cent. to the State, 25 per cent. to the county, and 15 per cent. to the municipality.

The petitioners claim that the various towns and cities of the State are imposing an additional tax on them by requiring that they pay a license fee for the privilege of delivering their whiskies to their customers in the several towns and cities.

The respondents, by their returns, say that their ordinances do not impose a license fee for the privilege of selling alcoholic liquors in the said towns and cities, but do impose a license fee for the privilege of delivering by the wholesaler to the retail liquor stores in the several cities and towns.

Since there is no traverse of the returns of the respondents, they must be taken to be true.

The intent of the Legislature, as set out in Section 8 of Act No. 232, Acts 1935, does not appear to us to be ambiguous. The language: "The licenses and excise taxes herein provided, *for the privilege of engaging in the business of manufacturing and selling alcoholic liquors* [italics added], shall be in lieu of all other taxes and licenses," etc., can mean only that the counties, towns, and cities shall not grant licenses nor impose taxes for the privilege of manufacturing and selling liquors.

Does the imposition of a license fee for the delivery by

the wholesaler of his whiskies in his own trucks violate these provisions of the statute?

It is the established law of this State that municipalities may enact and enforce ordinances for the regulation of persons residing outside the municipalities, doing business within the municipality, even by the delivery of goods from trucks therein.

In the case of *Croswell & Co. v. Town of Bishopville,* 172 S. C., 26, 172 S. E., 698, 699, it appears that the plaintiff was a wholesale grocer in the City of Sumter; it delivered its goods by its own trucks to its customers in the various towns in the State, including Bishopville, to which named town its trucks made one or two visits a week; that it was compelled to pay a license fee to the town to do business therein; it paid under protest and brought its action to recover. The trucks so used carried license plates which showed that the license tax required by the State had been paid. The town demurred, and its demurrer was sustained. The first exception of the appeal was on the ground that plaintiff was not doing business in the Town of Bishopville. This Court said:

"In regard to the first exception, the very recent case of *Pee Dee Chair Co. v. City of Camden,* 165 S. C., 86, 162 S. E., 771, seems to be conclusive of the question. In that case the Court holds that a single delivery of chairs, with no showing that other deliveries were contemplated, did not constitute such doing of business as would subject the chair company to the payment of a license tax. While not definitely decided in that case that the continued shipment of chairs into the adjoining town would constitute doing business and thereby subject the company to the payment of the license fee, the conclusion is irresistible that such is the necessary holding of the Court. For more than two years the truck of the plaintiff had made one or two trips to Bishopville each week. The conclusion is inescapable that this is the doing of business in the town and that this exception cannot be sustained.

"Exception 2 cannot be sustained for the reason that the imposition of a license tax for doing business is a right given municipalities by the Constitution. Section 5894 of the Code providing for the payment of an annual license by the owners of automobiles 'in lieu of all other State, municipal or county licenses' applies to the ownership of the car or truck. It cannot, nor does it attempt to, deprive municipalities of their constitutional right to impose a license tax on the owner of the car or truck for doing business even though the car or truck is used in the conduct of the business."

In the case of *American Bakeries Company v. City of Sumter*, 173 S. C., 94, 174 S. E., 919, 921, this Court said:

"In the very recent case of *Crosswell & Co. v. Bishopville*, 172 S. C., 26, 172 S. E., 698, this Court permitted a classification between merchants residing in another town where the circumstances and conditions were not similar.

"The classification between residents of a city and nonresidents where the circumstances and conditions are different is fully justified, and as there is nothing to show that the imposition of a higher license on nonresidents was unreasonable, capricious, or confiscatory, no provision of either the Constitution of the State or of the United States was violated."

This ground of the petition is untenable.

The respondent, City of Florence, has made the issue that the procedure adopted by the petitioners cannot be sustained because it violates the provisions of Sections 2845, 2846 and 2847, Code 1932.

Section 2845 provides that the collection of taxes shall not be stayed or prevented by any injunction, writ, or order issued by any Court or Judge thereof. *Provided*, that this section shall apply only to State, county, city, town or school taxes.

Section 2846 provides that if any person conceives that the tax against him is unjust or illegal for any cause, he shall pay the tax under protest, and within thirty days thereafter bring an action to recover it.

Section 2847 provides that there shall be no other remedy than that provided by Section 2846.

In the case of *Western Union Tel. Co. v. Town of Winnsboro,* 71 S. C., 231, 50 S. E., 870, 871, this question was considered. The language of Section 2845 was then included in Section 412 of the Code. The Circuit Judge to whom the telegraph company had applied for a restraining order against the town which was seeking to collect a license fee, said this: "After careful consideration, I am satisfied that it was the intention of the Legislature to prevent the Courts from granting orders of injunction staying the collection of municipal taxes, as well as the other taxes mentioned in said section."

On appeal, the Supreme Court sustained this ruling, saying:

"The appeal must be dismissed. We cannot see how Mr. Justice Gary could have granted the order of injunction applied for in the face of our tax laws and the decisions of this Court. In Section 412 of our 1902 Code of Laws, Vol. 1, we read that 'the collection of taxes shall not be stayed or prevented by any injunction, writ, or order issued by any Court or Judge thereof.' This was amended by the Act of 1902 (23 Stat., 972), by the addition of the following proviso: '*Provided*, that this section shall only apply to state, county, city, town and school taxes, and taxes voted by townships in aid of railroads, where the roads have been completed through said townships.' This is the law, whether the tax be light or burdensome, just or unjust, legal or illegal. But for such a statute the wheels of government, both of state and town, could at any moment be clogged or stopped by injunctions staying the collection of taxes. Our Courts have uniformly sustained this law. See, for example, *Chamblee v. Tribble,* 23 S. C., 70. This law may sometimes seem harsh and oppressive, and in some cases it may work hardship; but the aggrieved taxpayer is not left remediless. Section 413 comes to his relief by providing that, 'if he conceives the tax to be unjust or illegal for any cause,' although

he must pay the tax, he may do so 'under protest,' and then in due time he may 'bring an action against the county treasurer for the recovery thereof,' and, if he prevail in such proceeding by showing that the tax was 'wrongfully or illegally collected,' he shall have his tax refunded. Mr. Justice Gary's order is careful to do no prejudice to this right which the telegraph company may yet exercise.

"We are bound to hold that the 'license tax' imposed on the petitioner by the town of Winnsboro is a tax in the ordinary acceptation of that term, and that as such it comes within the provisions of our tax laws."

In the case of *Western Union Tel. Co. v. Query et al.,* 144 S. C., 234, 142 S. E., 509, 511, this Court said:

"The remedies prescribed by Civil Code 1922, §§ 511 to 513, and by section 22 of the Revenue Act of 1923, 33 Stats. at Large, p. 28, are exclusive in the cases to which they apply. 'Where a remedy is created and the time within which, the method according to which, it must be pursued are prescribed as conditions under which it can be availed of, the Court has no jurisdiction to entertain proceedings for relief begun at a later time or prosecuted in a different manner.' *International Paper Co. v. Commonwealth,* 232 Mass., 7, 10, 121 N. E., 510, 511. See, to same effect, *Desoto Gold Mining Co. v. Smith, Treasurer,* 49 S. C., 188, 192, 27 S. E., 1. The action in the instant case was not brought within the period prescribed by section 512—thirty days after payment. It appears from Exhibit A, attached to the complaint as a part thereof, that the taxes in question were paid on the 11th of July, 1924, and this action was commenced on the 30th of November, 1925. These are the only provisions of our law allowing a recovery of taxes paid under protest.

"*Fourth National Bank v. Greenville,* 91 S. C. [81], 83, 90, 74 S. E., 126; *Robinson v. City Council of Charleston,* 2 Rich., 317, 45 Am. Dec., 739; *Railroad Co. v. Reidsville,* 109 N. C., 494, 13 S. E., 865; *Lord & Polk Chemical Co. v. Board of Agriculture,* 111 N. C., 135, 15 S. E., 1032."

Petitioners contend that they are supported in the procedure they have adopted in this action by the cases of *Ex Parte Bates* (*City of Sumter v. Bates*), 127 S. C., 167, 120 S. E., 717, and *Martin v. Richardson, Chief Game Warden,* 160 S. C., 310, 158 S. E., 731.

In the first-named case this Court said: "The validity of the arrest depends upon the validity of the ordinance known as the 'License Ordinance' for the year 1923. The position of the city that the proceeding is virtually injunctive in its effect upon the collection of the city's revenue, and therefor obnoxious to section 511, vol. 3, Code of Laws 1922, cannot be sustained for the reason that the defendant is under arrest, entitled to the writ of *habeas corpus,* and to his discharge if this court should determine that he is restrained of his liberty by virtue of his arrest under a void ordinance, regardless of the effect of that decision upon the revenues."

The Court then proceeded to declare the ordinance was void because it was excessive, discriminatory, unreasonable, not graduated, and in conflict with constitutional and statutory laws.

That case is surely not authority for the procedure adopted in this case.

The question did not arise and was not decided in the case of *Martin v. Richardson, Chief Game Warden, supra,* and with equal certainty it may be said that that case is not authority for the procedure adopted in this one.

The judgment of the Court should be that the petition be dismissed, and the rule to show cause be discharged.

Mr. Chief Justice Stabler concurs.